IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Thomas J. Torrence, #094651,<br><br>      Petitioner,<br><br>  vs.<br><br><br>Jon Ozmint, Director, South Carolina<br>Department of Corrections, and Henry<br>McMaster, Attorney General of South<br>Carolina,<br><br>      Respondents. | Civil Action No. 3:05-0893-SB-JRM<br><br><br><br>**REPORT AND RECOMMENDATION** |

Petitioner, Thomas J. Torrence ("T. Torrence"), is an inmate at the South Carolina Department of Corrections serving a sentence of life imprisonment for murder, burglary, armed robbery, conspiracy, and kidnapping. He filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on March 23, 2005. Respondents filed a return and motion for summary judgment on August 15, 2005. Their motion is supported by a voluminous state court record including the record on direct appeal ("ROA ___"), the appendix to Torrence's petition for writ of certiorari following denial of his application for post-conviction relief ("PCR") ("App. ___") and the supplemental appendix thereto ("Supp. App. ___"). An order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was issued on September 15, 2005. Torrence filed his response through counsel on January 30, 2006.

### Background and Procedural History

On the morning of February 12, 1987, Dennis Lollis was found murdered in Room 110 of the Red Roof Inn in Cayce, South Carolina. The investigation led to the arrest of T. Torrence, his wife Donna Torrence ("D. Torrence"), and his brother Michael Torrence ("M. Torrence")

for the murder of Lollis, his roommate, Charles Bush, and related crimes. The record shows that D. Torrence was a dancer at a club in the Columbia area. Bush visited the club on the night of February 10. The Torrences learned that Bush stayed at the Red Roof Inn with Lollis. On February 11, T. Torrence and M. Torrence followed Bush to work and punctured his tire. That night D. Torrence lured Bush to the Torrences' residence where he was robbed and murdered. The Torrences then went to the Red Roof Inn. Using Bush's key, T. Torrence and M. Torrence entered room 110, murdered and robbed Lollis.

Eventually, the three Torrences fled to Charleston. Law enforcement authorities located them and began to question T. Torrence and D. Torrence on the afternoon of April 5, 1987. They were transported to Lexington County, and T. Torrence was arrested on April 6. He was indicted in July of 1987.

The State sought the death penalty for T. Torrence. At a trial in May of 1992, T. Torrence was convicted, but the jury recommended life imprisonment. He was sentenced accordingly. T. Torrence was represented at trial by Robert T. Williams, Sr. and William Y. Rast, Jr.

A direct appeal was filed through the South Carolina Office of Appellate Defense raising the following issues:

> 1.     The judge erred in ruling appellant was not denied his right to a speedy trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution where over five years passed between appellant's arrest and the solicitor calling his case for trial; where the solicitor's reason for the delay was based on an erroneous understanding of the law, and the solicitor's error caused appellant to lose the testimony of witnesses in his defense…

> 2.     The judge erred in ruling appellant's confession was voluntary, where various police officers questioned appellant in three different cities, over a sixteen hour period, denying him sleep, food, the support and advice of his family until he gave the statement the police wanted…

2

3.    The judge denied appellant the right to present a complete defense by refusing to allow appellant's father to testify appellant had expressed his fear to him of his brother Michael Torrence, before appellant was ever approached by the police, since appellant's defense was duress and the state repeatedly ridiculed his assertion he was acting out of fear of Michael…

4.    The judge erred in allowing the solicitor to make animated references to the witness stand during his closing argument since these allusions were impermissible references to appellant's right not to testify, to remain silent, and put to the state to its burden of proof….

The South Carolina Supreme Court affirmed the convictions pursuant to SCACR 220(b)(1) by an opinion filed March 23, 1995 (Supp. App. 2603).  See State v. Torrence, Mem. Op. No. 95-MO-117 (filed March 23, 1995).

T. Torrence filed a timely PCR application in the Court of Common Pleas for Lexington County (App. 22).  An evidentiary hearing was held on November 16, 2000. (App. 161).  T. Torrence appeared and testified.  He was represented by Lisa McPherson.  The PCR court issued a written order on December 27, 2001, denying relief (App. 01).  T. Torrence filed a motion to alter or amend the judgment.  The PCR court issued a second order expanding on some of Torrence's claims.   (App. 12).

McPherson and co-counsel filed a petition for writ of certiorari seeking review of the denial of T. Torrence's PCR.  In that petition the following issues were raised:

1.    Did the PCR Court err in finding that petitioner was not denied effective assistance of counsel at a critical stage, namely, the argument of his motion to dismiss the indictment on the ground that he had been denied a speedy trial?

2.    Did the PCR Court err in finding that petitioner was not denied effective assistance of appellate counsel, where counsel appealed some but not all of the grounds for denial of petitioner's renewed speedy trial motion?

3.    Did the PCR Court err in finding that petitioner waived the right to testify in his own defense?

4.       Did the PCR Court err in finding that petitioner was not denied effective assistance of counsel and was not denied the right to address the jury when his counsel prevented him from making a closing argument of his own composition?

5.       Did the PCR Court err in finding that petitioner was not denied effective assistance of counsel when his counsel failed to object to the solicitor's suggestion that the petitioner had wielded the murder weapon, when the solicitor knew that the only evidence was that petitioner's codefendant had done so, and when the solicitor had already proved as much in the codefendant's earlier trial?

6.       Did the PCR Court err in holding that petitioner was not denied effective assistance of counsel by his counsel's failure to object to a co-defendant's out-of-court statement?

### Grounds for Relief

In his present petition, T. Torrence asserts that he is entitled to a writ of habeas corpus on the following grounds:[1]

> **GROUND ONE**:  The trial judge erred in ruling petitioner was not denied his right to a speedy trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution where over five years passed between petitioner's arrest and the solicitor calling his case for trial; where the solicitor's reason for the delay was based on an erroneous understanding of the law, and the solicitor's error caused petitioner to lose the testimony of witnesses in his defense.

> **SUPPORTING FACTS**:  Petitioner was arrested in 1987.  He was moved in February 1988 from Central Correctional Institution to Lexington County to prepare for a May 1988 trial with codefendant Michael Torrence. At Lexington County, prisoner Charles Brown informed petitioner that Michael Torrence had taken credit for and confessed to Brown to being the murderer. In early May 1988 the solicitor stated he was not interested in trying petitioner at that time. In June 1988 petitioner's counsel wrote the solicitor requesting a disposition of charges, thereby asserting petitioner's

---

[1]It appears that T. Torrence is pursuing an appeal of a decision of the South Carolina Department of Probation, Parole and Pardon Services as well as a second PCR which is pending the Court of Common Pleas.  The only ground above affected by a pending action is Ground 11 which has ben abandoned in this action. Further, Grounds 3, 4, 7 and 9 have been withdrawn. See Response, V and VII.

right to a speedy trial. In June 1991 petitioner filed a motion to dismiss based on denial of a speedy trial. At the September 1991 hearing the solicitor stated he was prohibited fro trying petitioner and codefendant together for the death penalty by the South Carolina Supreme Court, relying on *State v. Bellamy*. That was a misstatement of *Bellamy*. Petitioner's case was called to trial in May 1992. Witness Brown could not be located and petitioner lost all benefits of a speedy trial.

**GROUND TWO:** The trial court erred, in violation of the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution, in ruling petitioner's confession was voluntary, under a totality of the circumstances, where various police officers questioned petitioner in three different cities, over a 17 hour period, denying him sleep, food, and the support and advice of his family, until he gave the statement police wanted.

**SUPPORTING FACTS**: Police originally questioned Petitioner the late morning hours of April 5, 1987. He gave a statement that implicated himself as an accessory after the fact. At 600 a.m. on April 6, 1987, petitioner finally concluded a statement that placed him at the scene of the two homicides. Between noon on April 5, 1987 and 6:00 a.m. on April 6th, petitioner was consistently questioned, during which time he was denied sustenance, sleep, and contact with any family members until, he gave police a statement tailored to their beliefs, which contained information interjected by police.

**GROUND THREE:** The trial judge denied petitioner the right to present a defense as guaranteed by the Sixth Amendment to the U.S. Constitution by refusing to allow petitioner's father to testify petitioner had earlier expressed fear to him of his brother Michael Torrence, since petitioner's defense was duress and the state repeatedly ridiculed his assertion of duress at trial.

**SUPPORTING FACTS:** The judge erred by excluding the proferred testimony of Ronald Torrence [Sr.] that included petitioner's expression of fear of Michael Torrence. This statement constituted a prior consistent statement and was admissible since it was made before petitioner had any contact with the police, and the state repeatedly attacked petitioner's contention of duress, and hammered on the inconsistencies in petitioner's statements which were introduced during the state's case-in-chief.

**GROUND FOUR**: The judge erred in allowing the solicitor to make animated references to the witness stand during his closing argument since these allusions were impermissible references to petitioner's right not to testify, to remain silent, and to put the state to it's burden of proof, such

rights being guaranteed by the Fifth and Sixth Amendments to the U.S. Constitution.

**SUPPORTING FACTS:** The court erred by failing to grant a new trial where the solicitor, at several points in his closing argument, made references to and pointed toward the witness stand stating the only facts to be taken are "from the people sitting in that chair and testifying." These were impermissible references to petitioner's not testifying and putting the state to it's burden of proof.

**GROUND FIVE:** The PCR court erred in finding that petitioner was not denied effective assistance of counsel at a critical stage, namely, the argument of his motion to dismiss the indictments on the ground that he had been denied a speedy trial, in contravention of the Sixth and Fourteenth Amendments to the U.S. Constitution.

**SUPPORTING FACTS:** Petitioner lacked the assistance of counsel in connection with his motion to dismiss for denial of a speedy trial. Counsel of record refused petitioner assistance of counsel at a hearing to dismiss all indictments for violation of his right to a speedy trial, a critical stage of the proceedings. Counsel was present throughout the entire proceedings, but remained mute, despite petitioner's specific request for assistance. Knowing counsel had a pending motion to be relieved, the court failed to order continued representation or appoint representation for the motion hearing.

**GROUND SIX:** The PCR court erred in finding that petitioner was not denied effective assistance of appellate counsel, in contravention of the Sixth Amendment to the U.S. Constitution, where counsel appealed some, but not all the grounds for denial of petitioner's renewed speedy trial motion.

**SUPPORTING FACTS:** Petitioner argued his speedy trial motion *pro se* before Judge Eppes. When new counsel was appointed, they renewed the motion before trial Judge Anderson. One of the grounds for denial of the motion at trial by Judge Anderson was that Judge Eppes had already heard and denied an identical motion. Appellate counsel appealed Judge Anderson's denial of the motion, but did not appeal the alternative ground that an identical motion had already been heard and denied. The S.C. Supreme Court affirmed since denial of the motion was based alternatively, upon an unappealed ground. Counsel was bound to know that the appeal of any trial ruling must encompass all the alternative grounds upon which the ruling was made.

6

**GROUND SEVEN**:  The PCR court erred in finding that petitioner waived the right to testify in his own defense, guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution.

**SUPPORTING FACTS:** When the trial judge asked petitioner's counsel whether petitioner would testify in his own defense, counsel responded that petitioner had not expressed a decision. Counsel asked the trial judge to make an on-the-record inquire of the petitioner, to which the trial judge stated he would return to the issue later and personally inquire of the petitioner. Trial counsel requested permission to privately discuss with petitioner the question of whether he would testify. After the conference between petitioner and his counsel, the trial judge failed to inquire of petitioner himself whether he would testify. The trial judge did not advise the petitioner of his right to testify, nor did the trial judge or counsel ascertain that petitioner meant to waive that right. The trial court ruled *sua sponte* that petitioner waived that right.

**GROUND EIGHT:**  The PCR court erred in finding that petitioner was not denied effective assistance of counsel and was not denied the right to address the jury, in contravention of the Sixth and Fourteenth Amendments to the U.S. Constitution, when his counsel prevented him from making a closing argument of his own composition.

**SUPPORTING FACTS:**     Petitioner intended to exercise his right to address the jury in closing argument of the guilt phase. Petitioner composed his intended address and presented it to counsel. Counsel advised petitioner most of the argument was improper. Counsel advised petitioner he could not argue anything about the facts or law. Petitioner severely truncated his intended argument and made only a few bland remarks. The court and state acquiesced and participated in this treatment of petitioner's right to a final jury argument.

**GROUND NINE:**  The PCR court erred in finding petitioner was not denied effective assistance of counsel, in contravention of the Sixth and Fourteenth Amendments to the U.S. Constitution, when his counsel failed to object to the solicitor's suggestion that the petitioner had wielded the murder weapon, when the solicitor knew that the only evidence was that petitioner's codefendant had done so, and when solicitor had already proved as much in the codefendant's earlier trial.

**SUPPORTING FACTS:**     Petitioner amended his PCR at the hearing to allege counsel's failure to object when the solicitor implied at trial that the petitioner stabbed one of the victims. The solicitor knew he bad no evidence petitioner wielded the knife. On the contrary, the solicitor earlier prosecuted

and convicted petitioner's brother by proving that he, and not petitioner, had done so. In the previous trial the solicitor characterized petitioner's role in the crime as minor. However, although petitioner was indicted under accomplice liability, the solicitor's actions tried petitioner as the principal, thus applying inconsistent theories of trial to which the solicitor knew were patently false.

**GROUND TEN**:  The PCR court erred in holding that petitioner was not denied effective assistance of counsel and the right to confrontation, in contravention of the Sixth and Fourteenth Amendments to the U.S. Constitution, where counsel failed to object to the admission of a non-testifying codefendant's out-of-court statement.

**SUPPORTING FACTS:**    Petitioner's counsel failed to object to the introduction into evidence and out-of-court statement of his former wife, Donna Torrence, implicating him. The statement was hearsay, violated the Confrontation Clause, and could not have been admitted over petitioner's objection. The state had no evidence of petitioner's role in the crime other than petitioner's confession. Introduction of the hearsay statement of Donna Torrence, to whom the state's only physical evidence implicated, corroborated the confession and nullified petitioner's contention before the jury that the confession was the product of duress and coercion. Although codefendant's statement was ordered redacted, it specifically implicated and identified petitioner in violation of the Confrontation Clause.

**GROUND ELEVEN**:   The South Carolina Department of Parole, Probation and Pardon Services violated the Eighth and Fourteenth Amendments of the United States Constitution, by deeming Petitioner ineligible for parole where the trial court specifically sentenced Petitioner to life sentences with parole eligibility, Petitioner had an expectation in the finality of those sentences, and the state waived appealing those sentences at direct or collateral proceedings.

**SUPPORTING FACTS:**  The trial judge, fully cognizant of sentencing and parole laws, specifically sentenced Petitioner, in oral pronouncement and written record, to life sentences with parole eligibility.  After Petitioner served 17 years, 12 years after sentencing, in which Petitioner developed an expectation of finality in those sentences. an administrative agency (SCDPPPS) removed Petitioner's parole eligibility in violation of the Eighth Amendment's Cruel and Unusual Punishment Clause and the Fourteenth Amendment's Due Process Clause.

## Discussion

Since Torrence filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and Green v. French, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999).  That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d).  See Williams v. Taylor, 529 U.S. 362 (2000).  In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases …. A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.
>
> *  *  *
>
> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court

9

> decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Id. at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

In his opposition memorandum, T. Torrence makes various arguments concerning his claims, but fails to incorporate a discussion of these standards.

1.    Speedy Trial

T. Torrence asserts that his right to a speedy trial was violated by post-arrest delay. T. Torrence was arrested in April of 1987. He was tried in May of 1992. Thus, there was a five-year delay in trial after T. Torrence was arrested.

According to the Sixth Amendment to the United States Constitution, "the accused shall enjoy the right to a speedy and public trial." The Fourteenth Amendment extends this right to state court trials. Klopfer v. North Carolina, 386 U.S. 213 (1967).

In Barker v. Wingo, 407 U.S. 514, 530-32 (1972), the Supreme Court adopted a four-part balancing test to evaluate speedy trial violation claims: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant timely asserted the right to a speedy trial; and (4) whether the defendant has suffered prejudice as a result of the delay. Under this test, the petitioner must show "that on balance, the four separate factors weigh in his favor." United States v. Thomas, 55 F.3d 144, 148 (4th Cir. 1995). No one factor is determinative and all four factors must be considered together. Barker, 407 U.S. at 533. Additionally, the first factor (length of delay) acts as a triggering mechanism, i.e., if the delay is within normal limits, there is no need to consider

the remaining factors.  Generally, a delay of over one year is presumed to be presumptively

prejudicial.  <u>Doggett v. United States</u>, 505 U.S. 647, 652 n. 1 (1992).

The undersigned finds that the delay in T. Torrence's case is presumptively prejudicial and

the length of delay must be considered with the other <u>Barker v. Wingo</u> factors.  This matter was

addressed on two occasions prior to trial.  A hearing was held before the Honorable Frank Eppes

on September 3, 1991 (ROA 3-39).  Judge Eppes  issued a written order on September 6, 1991,

denying T. Torrence's pro se motion to dismiss based upon the denial of a speedy trial citing

<u>Barker v. Wingo</u> (Supp. App. 2781-85).   The issue was revisited in a hearing before the

Honorable Ralph King Anderson on May 12, 1992.  After testimony was taken and exhibits were

introduced, Judge Anderson denied T. Torrence's motion to dismiss quoting at length from <u>Barker</u>

<u>v.Wingo</u> and making specific findings (ROA 70-141).

The speedy trial issue was raised as the first issue in T. Torrence's direct appeal. (Supp

App. 2482).   As noted above, the South Carolina Supreme Court affirmed T. Torrence's

conviction pursuant to Rule 220(b)(1), SCACR.[2]  With respect to this issue, the Court cited <u>South</u>

<u>Carolina Tax Comm. v. Gaston Copper Recycling</u>, 447 S.E.2d 843 (1994) for the rule that "where

a judge's ruling is based on more than one ground, this Court will affirm unless appellant appeals

all grounds."   The court also cited several other cases.

      a.     Reasons for Delay

Under <u>Barker v. Wingo</u>, it is recognized that reasons for delay fall into three

categories: (1) improper (such as delay to harass the defendant); (2) neutral (such as understaffed

---

[2]This rule provides that the Supreme Court may dismiss an appeal by memorandum opinion
if it is determined "that a published opinion would have no precedential value and … a judgment
of the trial court is based on findings of fact which are not clearly erroneous."

solicitor's office); and (3) valid (such as a missing witness).  These reasons are weighted either for or against the prosecution and defendant.  United States v. Grimmond, 137 F.3d 823, 828 (4th Cir. 1998).

Judge Eppes  found several reasons that T. Torrence's trial was delayed, most of which weigh against T. Torrence.  First, the trial was delayed because after arrest in the Lexington case T. Torrence and M. Torrence were charged with an unrelated Charleston murder.  M. Torrence pled guilty to murder and T. Torrence was convicted as an accessory after the fact of the murder in 1988 receiving a sentence of ten years.  Second, the State elected not to try M. Torrence and T. Torrence together in this case.  M. Torrence was tried first and was sentenced to death.  His appeal raised a serious issue of how the jury should be instructed with respect to parole eligibility in capital cases.  T. Torrence's case was not called awaiting a ruling by the South Carolina Supreme Court.[3]  After the ruling, the State decided to retry the penalty phase of M. Torrence's case.  M. Torrence was again sentenced to death.[4]

Judge Eppes  also noted that T. Torrence's dissatisfaction with his attorneys caused some delay.  T. Torrence was originally represented by John Delgado.  When his family could not comply with fee requirements, Delgado withdrew[5] and Dale DuTremble was appointed to represent T. Torrence (see Order filed May 27, 1987, Supp. App. 2751 and 2756).  DuTremble initiated plea negotiations, but he left private practice, and Delgado was appointed to represent T.

---

[3]The Supreme Court vacated M. Torrence's death sentence based upon the faulty instruction that would have applied equally to T. Torrence.  See State v. Torrence, 406 S.E.2d 315, 320 (1991).

[4]It is not clear from this record when the resentencing took place.  However, M. Torrence attempted to waive appeals in 1994.  See State v. Torrence, 451 S.E.2d 883 (1994).

[5]Delgado withdrew shortly after the preliminary hearing.

Torrence.[6]  In June of 1991, Delgado moved to be relieved as counsel.[7]  While this motion was pending, T. Torrence filed a pro se motion to recuse Judge Baggett.  After a visit to the South Carolina Supreme Court, these issues came before Judge Eppes  at the September 3, 1991 hearing.[8] (ROA 32-34).  Based on this hearing, Delgado was relieved and Williams and Rast were appointed on September 6, 1991. (ROA 2728).  T. Torrence's new attorneys immediately moved for, and were granted, a continuance.  See Order dated September 30, 1991 that the case not be called before February of 1992 (Supp. App. 2806).  The trial was held in May of 1992.

The undersigned finds that waiting for the prosecution of T. Torrence in Charleston and trying and retrying M. Torrence before T. Torrence are both valid reasons for delaying the trial of T. Torrence.  The resentencing hearing was not mandated until July of 1991.

> b.    Assertion of the Right

Judge Eppes  and Judge Anderson both found that T. Torrence did not assert his right to a speedy trial until June of 1991.  On June 17, 1991, T. Torrence wrote a letter to Judge Baggett as follows:

> I am writing to you to make two requests for my hearing date scheduled before you on June 21, 1991.  They are as follows
> (1)  That you allow a Motion on my behalf for a speedy trial; and
> (2)  That you excuse yourself from this Hearing and/or Grant a Change of Venue.
> I made these requests because the Eleventh Judicial Circuit, with you presiding, have twice appointed me ineffective counsel who have misrepresented my interests and hurt my case.  (Supp. App. 2790).

---

[6]This apparently occurred in 1989 (Supp. App. 77).

[7]This motion was due in part to T. Torrence filing a grievance against Delgado. (RDA 34).

[8]This was the same hearing where Judge Eppes  heard arguments on T. Torrence's speedy trial motion.

T. Torrence argues "(i)t is simply factually incorrect that Thomas Torrence did not assert his right to a speedy trial until June 17, 1991." (Response, fourth unnumbered page). However, the undersigned finds that the findings of Judges Eppes and Anderson are supported by the record. T. Torrence refers to a letter from DuTremble to the Solicitor dated June 10, 1988 (Supp. App. 2787) and a letter from T. Torrence to Delgado dated July 13, 1989 (Supp. App. 2788) followed by a letter from Delgado to the Solicitor dated August 3, 1989 (Supp. App. 2789) constitute demands for a speedy trial. However, these letters merely indicate a decision by T. Torrence not to negotiate a plea. There is no explicit request for a speedy trial.

    c.    Prejudice

Judge Eppes found that T. Torrence "has completely failed to show any prejudice in the delay of his trial." (Supp. App. 2784). Judge Anderson made a similar finding (Supp. App. 140-41). At the hearing before Judge Anderson, T. Torrence argued that he was prejudiced because prior to trial his grandmother had died and his aunt had become senile rendering them unavailable for trial. He also argued that while he was detained at the Lexington County Jail in 1988, a prisoner, Charles Brown, told him that he had spoken to M. Torrence who had said that he (M. Torrence) was the one who had committed the murders.[9] Judge Anderson ruled that the alleged statements of M. Torrence to Brown were "paradigmatic hearsay" and that T. Torrence had produced no evidence of any attempt to locate Brown. (Supp. App. 141).

The undersigned concludes that the State Court correctly applied Barker v. Wingo to T. Torrence's speedy trial motion.

---

[9]In an affidavit filed in this case T. Torrence further states that another inmate, Lloyd Staples, told him the same thing.

2.      Voluntariness of Statement (Ground 2)

After T. Torrence and D. Torrence were apprehended in Charleston on April 5, 1987, T. Torrence gave a series of statements in Charleston and Lexington Counties.  One was a  joint  tape-recorded  statement  with  D. Torrence  (see Ground 10).   The statements were progressively inculpatory.  The last was given in Lexington County in the early morning hours of April 6, 1987.  A lengthy Jackson v. Denno[10] hearing was held before Judge Anderson on May 12, 1992.[11] (Supp. App. 143-385).  At the conclusion of the hearing, Judge Anderson made a complete,  on  the  record  finding,  citing  Miranda v. Arizona, 384 U.S. 436 (1966) and other pertinent authority, that T. Torrence "was fully advised of his rights as required by Miranda"; (2) "knowingly and intelligently waived his rights under the Fifth and Sixth Amendments"; and (3) that "all the statements identified in this record made by the defendant were statements that were freely and voluntarily given by the defendant without any duress, without coercion, without undue influence,  without  reward,  without  promise  or hope of reward,  without  promise of leniency, without  threat  of  injury  and  without  compulsion  or  inducement  of  any  kind and that these statements are the voluntary and free produce of the unconstrained will of the defendant." (Supp. App. 383-84).  The statements were admitted into evidence and considered by the jury with proper instructions from the court.

On direct appeal, T. Torrence challenged Judge Anderson's ruling arguing that his final statement was involuntary because the officers questioned him "in three different cities, over a

_____

[10]378 U.S. 368 (1964).

[11]This hearing was held on the same day as the hearing on T. Torrence's second speedy trial motion as discussed above.

sixteen hour period, denying him sleep, food, the support and advice of family until he gave the statement the police wanted." (Final Brief of Appellant, p. I).  The South Carolina Supreme Court considered this issue on its merits in affirming T. Torrence's conviction.[12]

Courts have identified various factors to be considered when examining the totality of the circumstances surrounding a confession.  Many of these are not raised by T. Torrence, and therefore, support Judge Anderson's finding by negative inference.[13]

The factors argued by T. Torrence were rejected by Judge Anderson in his analysis of the totality of the circumstances.  T. Torrence's arguments to the court are primarily based on his testimony during the Jackson v. Denno hearing that is at odds with the law enforcement officials who testified.

The length of detention in which interrogation occurred is a relevant factor when examining the totality of the circumstances.  See Chambers v. Florida, 309 U.S. 227 (1940) (confessions of young, illiterate men who were questioned incessantly over five-day period involuntary).  Here, T. Torrence's first contact with law enforcement was at 1:30 to 1:45 p.m. (ROA 149), and he concluded his final statement around 6:00 a.m. the following morning.  However, as discussed below, T. Torrence was not under continuous interrogation during this period.

The repeated and prolonged nature of questioning may render a confession involuntary.  In Ashcraft v. Tennessee, 322 U.S. 143 (1944), the suspect was interrogated "in relays" by the

---

[12]The cases cited in the memorandum opinion are cases dealing with the voluntariness of confessions, and not procedural matters.

[13]These include youth, Gallegos v. Colorado, 370 U.S. 49 (1962) (confession of fourteen-year-old held incommunicado for five days involuntary); mental incapacity, Smallwood v. Warden, Md. Penitentiary, 367 F.2d 945 (4th Cir. 1966) (confession of illiterate defendant with low I.Q. involuntary) ; and torture, Brown v. Mississippi, 297 U.S. 278 (1936) (confession extracted by physical coercion involuntary).

police for thirty-six hours until he confessed. The statement was ruled involuntary. Here, T. Torrence was not continuously questioned. The record shows a good portion of the time was taken to transport T. Torrence from Charleston to Pine Ridge to Lexington.

T. Torrence's primary argument is that the law enforcement officers subjected him to psychological coercion by depriving him of food, cigarettes, sleep and contact with his family rendering his last statement involuntary. The record shows that T. Torrence and D. Torrence were given food in Charleston (ROA 172). Investigator Hawkins denied withholding cigarettes from T. Torrence and testified that he actually supplied T. Torrence cigarettes (ROA 177-81). The investigators denied attempts to keep T. Torrence awake and testified that T. Torrence did not sleep during transport although he could have. (Id. and ROA 202-04).[14] The officers also denied that T. Torrence asked to call his father during the investigation. (ROA 190).

Last, T. Torrence argues that he was not allowed to talk to D. Torrence during the interrogations. Obviously, the officers desired to question T. Torrence and D. Torrence separately. In his memorandum, T. Torrence concedes that such reasons are valid but argues there is "evidence to suggest that seeing his wife would be used as an incentive to provide a satisfactory statement." T. Torrence, however, does not identify such evidence.

In Hayes v. Washington, 373 U.S. 503 (1963), the court found a confession involuntary where the defendant was told he could not see his wife until after he confessed. Here, T. Torrence asked to see D. Torrence during the transport from Charleston to Lexington County. It was during this trip that T. Torrence confessed his involvement with M. Torrence in the murder of a

---

[14]Further, after giving the last statement, T. Torrence led the investigators to the Georgia side of the Savannah River to show them where he had disposed of evidence of the homicide.

Charleston prostitute.[15]  D. Torrence was unaware of T. Torrence's role.  On arrival in Lexington County, T. Torrence was allowed to speak with D. Torrence and told her of the Charleston murder.  It was after this conversation that T. Torrence and D. Torrence gave a joint, tape recorded, statement about the murders of Bush and Lollis which was admitted at trial.

T. Torrence has not shown that the determinations of the South Carolina Courts on this issue were contrary to, or involved an unreasonable application of clearly established Supreme Court precedent.

3.      Ineffective Assistance of Counsel

T. Torrence asserts that his trial counsel and his counsel on direct appeal were constitutionally ineffective.  He argues that his trial attorneys were ineffective because they failed to object to the introduction into evidence of a pre-trial statement of D. Torrence (Ground 10), limited his closing argument to the jury (Ground 8), and abandoned him at his hearing on his motion for a speedy trial before Judge Eppes  (Ground 5).  He argues that appellate counsel was ineffective for failing to appeal all grounds relevant to his speedy trial motion (Ground 6).

a.      Trial Counsel

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution.  McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970).  In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel.  A petitioner must first show that his

_____

[15]This was the case that M. Torrence and T. Torrence faced in Charleston County before being prosecuted in the murders of Bush and Lollis.

counsel committed error.  If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986).  In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal.  Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional  errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added).

Strickland at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  The court's analysis should center on whether the state courts properly applied the Strickland test.  See Williams v. Taylor, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

The PCR court did not individually address T. Torrence's claims of ineffective assistance of trial counsel. The court noted the difficulty of the case including the fact that during trial, T. Torrence ended communication with one of his attorneys. The court found "as fact[16] that [T. Torrence's] trial counsel clearly performed within the parameters of the prevailing professional norms in the trial of [his] case," and that "no issue raised by [T. Torrence] regarding the assistance of his counsel would entitle [him] to relief pursuant to the PCR Act because it could not reasonably be calculated to produce a different result at trial." (App. 0008). The court cited Strickland v. Washington. The undersigned concludes that the PCR court found that trial counsel committed no error, and if error had been committed, T. Torrence has failed to show prejudice.

As discussed above, a joint tape recorded statement made by T. Torrence and D. Torrence after they arrived in Lexington County was admitted into evidence and heard by the jury during the penalty phase of T. Torrence's trial. No objection was raised by counsel. This claim was raised as Ground 6 in the petition for writ of certiorari following denial of the PCR application.

Respondents argue, as they did in state court, that the decision not to object to the joint statement was a valid tactical decision of counsel. It is obvious that a viable objection could have been lodged based on the hearsay rule and Bruton v. United States, 391 U.S. 123 (1968). At the PCR hearing, Williams testified that no objection was made because the statement was helpful to the defense. (App. 361).

In Sexton v. French, 163 F.3d 874, 885 (4th Cir. 1998), *cert. denied*, 528 U.S. 855 (1999). the Court differentiated the types of decisions which must be made by criminal defense counsel.

> There are essentially two categories of decisions made by a criminal defendant's trial counsel: those decisions, deemed "personal," that must be

---

[16]Of course, a state court's conclusion that counsel rendered effective assistance is not a "fact" binding on federal habeas review. Strickland, 466 U.S. 698.

made with the defendant's consent and those that may be made without the defendant's consent. Decisions that may be made without the defendant's consent "primarily involve trial strategy and tactics," such as "what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." The decisions that must be made with the defendant's consent include the decision to enter a guilty plea, the decision to waive a jury trial, the decision to pursue an appeal, and, as noted in Part III of this opinion, the decision to testify at trial. (Citations omitted).

Tactical decisions involving trial strategy include such matters as stipulation of a witness as an expert, lines of questioning on cross-examination, United States v. Caldwell, 201 F.3d 437 (4th Cir. 1999) (Table),  moving to suppress a confession, Sexton v. French, 163 F.3d at 885 ("The decision whether to file a …motion to suppress a confession is a classic tactical decision.") and objecting to evidence, Fitzgerald v. Thompson, 943 F.2d 463 (4th Cir. 1991), cert. denied, 502 U.S. 1112 (1992).

When considering a claim of ineffective assistance of counsel based on tactical decisions "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland v. Washington, 466 U.S. at 689. Thus, courts are instructed not to second guess an attorney's trial strategy and tactics. Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977); Stamper v. Muncie, 844 F.2d 170 (4th Cir. 1991).

Under this standard, the failure to object to the joint statement was neither error nor prejudicial. Counsel's motion to suppress T. Torrence's final statement had been denied and was to be presented to the jury. The joint statement tended to minimize T. Torrence's role in the

murders as compared to the final statement. Given the bifurcated procedure in capital cases, the joint statement was reasonably helpful during the penalty phase.

Next, T. Torrence argues that his trial attorneys limited his jury argument in the guilt/innocense stage of the trial. In South Carolina, a defendant in a capital case has the statutory right to address the jury in both phases of the trial in addition to his constitutional right to testify (or not). T. Torrence did not testify at trial. He prepared remarks which were reviewed by counsel. According to Rast, he and Williams worked with T. Torrence on the content of the statement advising him that "he could not testify in this statement that he was going to give to the jury." (App. 339). Further, according to Rast, "Mr. Williams and I never told him to make it short." (Id.).

T. Torrence's proposed written remarks are not a part of the record. Rast and Williams gave T. Torrence correct legal advice–testimonial evidence cannot be presented during closing arguments.[17] T. Torrence has not proferred what he proposed to say during the penalty phase argument. The PCR court correctly ruled there was no error or prejudice on this claim.

Last, T. Torrence asserts that his attorney (Delgado) was ineffective at the hearing on the pro se speedy trial motion heard by Judge Eppes on September 3, 1991. This was the same hearing at which Judge Eppes granted Delgado's motion to be relieved leading to the appointment of Williams and Rast. Before hearing, T. Torrence had filed a grievance against Delgado.

This issue was specifically addressed by the PCR court in its order denying the motion to amend. The court found:

> Contrary to the allegation contained in the application, the transcript of the hearing before Judge Eppes and the testimony of counsel at the PCR

---

[17]As a matter of fact, the Solicitor objected during T. Torrence's closing argument on this very basis.

hearing show that counsel for the Applicant was present during the hearing and was available to the Applicant. Therefore, the Court find the Applicant had the opportunity to proceed with assistance of counsel if he so chose." (App. 0015).

T. Torrence appears to argue that the PCR court's factual finding of Delgado's presence was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). (See Response, unnumbered page 5) ("The finding of the court on post-conviction relief that Mr. Torrence had counsel present and available to him (Order of June 12, 2002) is not correct and has not factual basis, from a plain reading of the transcript). The undersigned disagrees.

The transcript of the hearing confirms Delgado's presence. The cover page for the hearing notes the appearance of Delgado (ROA 1). In announcing the case, the Solicitor mentions Delgado's motion to be relieved implying his presence. (ROA 3). Immediately after T. Torrence's argument on his speedy trial motion, the Court states, "Well before I rule on this, let me hear from Mr.Delgado…" (ROA 32). The motion to be relieved was then discussed. The record supports the finding of the PCR court.[18]

    b.    Appellate Counsel

T. Torrence asserts that his attorney on direct appeal was ineffective because he appealed some, but not all grounds fro denial of petitioner's renewed speedy trial motion. This issue was raised as Ground 2 in T. Torrence's petition for writ of certiorari following denial of his PCR. In that petition, T. Torrence's position is summarized:

Following denial of petitioner's original speedy trial motion, argued *pro se* before Judge Epps, petitioner's newly appointed counsel, Mr. Rast and Mr.

---

[18]In any event, the speedy trial issue was raised again before Judge Anderson. At that hearing, T. Torrence was represented by counsel, testified, and exhibits were introduced. Thus, any prejudice from the first hearing was cured at the hearing of May 18, 1992. (ROA 70-141).

Williams, renewed the motion and argued the renewed motion before the trial judge, Judge Anderson. One of the grounds fro denial of the renewed motion at trial by Judge Anderson was that Judge Eppes had already heard and denied an identical motion [PCR hearing tr., p. 124] Appellate counsel appealed Judge Anderson's denial of the motion, but did not appeal the alternative round that an identical motion had already been heard and denied. On appeal the Supreme Court affirmed since the denial of the motion was based alternatively upon an unappealed ground.

On direct appeal, the South Carolina Supreme Court rejected T. Torrence's argument that his right to a speedy trial had been violated citing South Carolina Tax Commission v. Gaston Copper Recycling, 447 S.E.2d 843 (1994) summarizing its holding ("where a judge's ruling is based on more than one ground, this Court will affirm unless appellant appeals all grounds."). However, the Supreme Court also listed three other cases, two of which deal with the merits of speedy trial motions[19] not the procedural issue raised in Gaston Copper Recycling. Thus, the Supreme Court alternately ruled that T. Torrence's speedy trial violation was without merit.

The right to effective assistance of counsel extends to direct appeal. Pennsylvania v. Finley, 481 U.S. 551, 559 (1987). Such a claim must be properly presented to the state courts to be considered in a § 2254 petition. If it is properly presented, ineffective assistance of appellate counsel is judged under the same standard as ineffective assistance of trial counsel. However, failure to raise even non-frivolous claims on direct appeal does not constitute cause for procedural default. Smith v. South Carolina, 882 F.2d 895, 898 (4th Cir. 1989).

Based on this record, the undersigned concludes that the South Carolina Supreme Court rejected T. Torrence's speedy trial claim on the merits. Therefore, he has not shown prejudice with respect to this claim.

---

[19]See State v. Chapman, 344 S.E.2d 611 (1986) and State v. Waites, 240 S.E.2d 651 (1978).

### **Conclusion**

It is recommended that respondents' motion for summary judgment be granted, and the petition dismissed with prejudice and without an evidentiary hearing.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

February 21, 2006
Columbia, South Carolina


**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Magistrate Judge's Report and Recommendation**
**&**
**The Serious Consequences of a Failure to Do So**

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, *supra*, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See Wright, *supra*,; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201