IN THE UNITED STATES DISTRICT COURT      RECEIVED

FOR THE DISTRICT OF SOUTH CAROLINA USDC. CLERK. CHARLESTON, SC

2008 MAR -5  P 12: 39

Thomas J. Torrence, #094651,           )
                                       )
                Petitioner,            )
                                       )
v.                                     )     Civil Action No. 3:05-0893-SB
                                       )
Jon Ozmint, Director, South Carolina   )     **ORDER**
Department of Corrections, and         )
Henry McMaster, Attorney General       )
of South Carolina,                     )
                                       )
                Respondents.           )
_____)

This matter is before the Court upon Petitioner Thomas J. Torrence's ("the Petitioner") *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The record includes a Report and Recommendation ("R&R") of a United States Magistrate Judge, which was made in accordance with 28 U.S.C. § 636(b). In the R&R, Magistrate Judge Joseph R. McCrorey recommends that the Court grant the Respondents' motion for summary judgment. Attached to the R&R was a notice advising the Petitioner of his right to file written objections to the R&R within ten days of being served with a copy of that report. See 28 U.S.C. § 636(b)(1). The Petitioner filed timely objections, and the matter is ripe for review.

## BACKGROUND

### I.    Procedural History

The Petitioner filed the present § 2254 petition in March of 2005. At the time of filing his petition, the Petitioner also filed a motion to hold his § 2254 petition in abeyance pending exhaustion in state court of ground eleven. The Magistrate Judge denied the

Petitioner's motion to hold § 2254 petition in abeyance, and this Court affirmed the Magistrate Judge's denial. Subsequently, the Respondents filed a motion for summary judgment, supported by a voluminous state court record, including the record on direct appeal, the appendix to the Petitioner's petition for a writ of certiorari following denial of his application for post-conviction relief ("PCR"), and the supplemental appendix. The Petitioner, through counsel, filed a response in opposition to the Respondents' motion. Thereafter, the Magistrate Judge filed an R&R, recommending that the Court grant the Respondents' motion for summary judgment. The Petitioner filed timely objections to the R&R.

## II.     Factual History

On the morning of February 12, 1987, Dennis Lollis ("Lollis") was found murdered in room 110 of the Red Roof Inn in Cayce, South Carolina. The investigation led to the arrest of the Petitioner, his wife Donna Torrence ("Donna"), and his brother Michael Torrence ("Michael") for the murder of Lollis and his roommate, Charles Bush ("Bush"), and related crimes.

According to the record, Donna was a dancer at a club in the Columbia area. Bush visited the club on the night of February 10, 1987. The Torrences learned that Bush stayed at the Red Roof Inn with Lollis, and on February 11, the Petitioner and his brother, Michael, followed Bush to work and punctured his tire. That night, Donna lured Bush to the Torrences' residence, where he was robbed and murdered. The Torrences then went to the Red Roof Inn, and, using Bush's key, the Petitioner and his brother entered room 110 and murdered and robbed Lollis.

Eventually, the Torrences fled to Charleston; however, law enforcement authorities

2

located them and began to question the Petitioner and his brother on the afternoon of April 5, 1987. The brothers were transported to Lexington County, and the Petitioner was arrested on April 6, 1987. He was indicted in July of 1987.

The state sought the death penalty for the Petitioner. At a trial in May of 1992, the Petitioner was convicted of murder, burglary, armed robbery, conspiracy, and kidnapping, but the jury recommended life imprisonment. He was sentenced accordingly. At trial, the Petitioner was represented by attorneys Robert T. Williams, Sr. and William Y. Rast, Jr.

The Petitioner filed a direct appeal through the South Carolina Office of Appellate Defense, wherein he raised the following issues:

1. Whether the judge erred in ruling appellant was not denied his right to a speedy trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution where over five years passed between appellant's arrest and the solicitor calling his case for trial; where the solicitor's reason for the delay was based on an erroneous understanding of the law, and the solicitor's error caused appellant to lose the testimony of witnesses in his defense.

2. Whether the judge erred in ruling appellant's confession was voluntary within the meaning of the Fourteenth Amendment to the United States Constitution where various police officers questioned appellant in three different cities, over a sixteen hour period, denying him sleep, food, the support and advice of his family until he gave a statement the police believed.

3. Whether the judge denied appellant the right to present a complete defense as guaranteed by the Sixth Amendment to the United States Constitution by refusing to allow appellant's father to testify appellant had earlier expressed his fear to him of his brother Michael Torrence, since appellant's defense was duress and the state repeatedly ridiculed his assertion of duress at trial.

4. Whether the judge erred in allowing the solicitor to make animated references to the witness stand during his closing argument since these allusions were impermissible references to appellant's right not to testify, to remain silent, and put the state to its burden of proof, such rights being guaranteed by the Fifth and Sixth Amendments to

3

the United States Constitution.

(Supp. App. at 2487-88.)

In an opinion filed March 23, 1995, the South Carolina Supreme Court affirmed the Petitioner's convictions. State v. Torrence, Mem. Op. No. 95-MO-117 (S.C. S. Ct. March 23, 1995) (Supp. App. at 2603-04.)

On December 1, 1995, the Petitioner filed a timely PCR application. An evidentiary hearing was held on November 16, 2000, and the Petitioner, who was represented by attorney Lisa McPherson, appeared and testified. On December 27, 2001, the PCR court issued a written order denying the Petitioner's PCR application. After the Petitioner filed a motion to alter or amend the judgment, the PCR court issued a second order dismissing the allegations not addressed in the first order and otherwise denying the motion.

Following the denial, the Petitioner, through counsel, filed a petition for a writ of certiorari raising the following issues:

1.  Did the PCR Court err in finding that petitioner was not denied effective assistance of counsel at a critical stage, namely, the argument of his motion to dismiss the indictment on the ground that he had been denied a speedy trial?

2.  Did the PCR Court err in finding that petitioner was not denied effective assistance of appellate counsel, where counsel appealed some but not all the grounds for denial of petitioner's renewed speedy trial motion?

3.  Did the PCR Court err in finding that petitioner waived the right to testify in his own defense?

4.  Did the PCR Court err in finding that petitioner was not denied effective assistance of counsel and was not denied the right to address the jury when his counsel prevented him from making a closing argument of his own composition?



5.  Did the PCR Court err in finding that petitioner was not denied effective assistance of counsel when his counsel failed to object to the solicitor's suggestion that the petitioner had wielded the murder weapon, when the solicitor knew that the only evidence was that the petitioner's codefendant had done so, and when the solicitor had

4

already proved as much in the codefendant's earlier trial?

6.    Did the PCR Court err in holding that petitioner was not denied effective assistance of counsel by his counsel's failure to object to a co-defendant's out-of-court statement?

(Pet. for Writ of Cert. at iv.) On April 8, 2004, the South Carolina Supreme Court denied the petition for a writ of certiorari.

Subsequently, the Petitioner filed the present § 2254 petition, wherein the Petitioner asserts that he is entitled to a writ of habeas corpus on the following grounds:[1]

**GROUND ONE**: The trial judge erred in ruling petitioner was not denied his right to a speedy trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution where over five years passed between petitioner's arrest and the solicitor calling his case for trial; where the solicitor's reason for the delay was based on an erroneous understanding of the law, and the solicitor's error caused petitioner to lose the testimony of witnesses in his defense.

**SUPPORTING FACTS**: Petitioner was arrested in 1987. He was moved in February 1988 from Central Correctional Institution to Lexington County to prepare for a May 1988 trial with codefendant Michael Torrence. At Lexington County, prisoner Charles Brown informed petitioner that Michael Torrence had taken credit for and confessed to Brown to being the murderer. In early May 1988 the solicitor stated he was not interested in trying petitioner at that time. In June 1988 petitioner's counsel wrote the solicitor requesting a disposition of charges, thereby asserting petitioner's right to a speedy trial. In June 1991 petitioner filed a motion to dismiss based on denial of a speedy trial. At the September 1991 hearing the solicitor stated he was prohibited from trying petitioner and codefendant together for the death penalty by the South Carolina Supreme Court, relying on *State v. Bellamy*. That was a misstatement of *Bellamy*. Petitioner's case was called to trial in May 1992. Witness Brown could not be located and petitioner lost all benefits of a speedy trial.

---

[1] At the time the R&R was issued, the Petitioner was in the process of pursuing an appeal of a decision of the South Carolina Department of Probation, Parole, and Pardon Services as well as a second PCR, which was pending before the Court of Common Pleas. The only ground affected by the pending action is ground 11, which has been abandoned in this action. Furthermore, grounds 3, 4, 7, and 9 have been withdrawn. In the interest of clarity, the Court has left out the omitted grounds (including ground 11) from the above recitation of the Petitioner's asserted grounds for relief.

5

**GROUND TWO**: The trial court erred, in violation of the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution, in ruling petitioner's confession was voluntary, under a totality of the circumstances, where various police officers questioned petitioner in three different cities, over a 17 hour period, denying him sleep, food, and the support and advice of his family, until he gave the statement police wanted.

**SUPPORTING FACTS**: Police originally questioned Petitioner the late morning hours of April 5, 1987. He gave a statement that implicated himself as an accessory after the fact. At 600 a.m. on April 6, 1987, petitioner finally concluded a statement that placed him at the scene of the two homicides. Between noon on April 5, 1987 and 6:00 a.m. on April 6th, petitioner was consistently questioned, during which time he was denied sustenance, sleep, and contact with any family members until he gave police a statement tailored to their beliefs, which contained information interjected by police.

. . .

**GROUND FIVE**: The PCR court erred in finding that petitioner was not denied effective assistance of counsel at a critical stage, namely, the argument of his motion to dismiss the indictments on the ground that he had been denied a speedy trial, in contravention of the Sixth and Fourteenth Amendments to the U.S. Constitution.

**SUPPORTING FACTS**: Petitioner lacked the assistance of counsel in connection with his motion to dismiss for denial of a speedy trial. Counsel of record refused petitioner assistance of counsel at a hearing to dismiss all indictments for violation of his right to a speedy trial, a critical stage of the proceedings. Counsel was present throughout the entire proceedings, but remained mute, despite petitioner's specific request for assistance. Knowing counsel had a pending motion to be relieved, the court failed to order continued representation or appoint representation for the motion hearing.

**GROUND SIX**: The PCR court erred in finding that petitioner was not denied effective assistance of appellate counsel, in contravention of the Sixth Amendment to the U.S. Constitution, where counsel appealed some, but not all the grounds for denial of petitioner's renewed speedy trial motion.

**SUPPORTING FACTS**: Petitioner argued his speedy trial motion pro se before Judge Eppes. When new counsel was appointed, they renewed the motion before trial Judge Anderson. One of the grounds for denial of the motion at trial by Judge Anderson was that Judge Eppes had already heard and denied an identical motion. Appellate counsel appealed Judge Anderson's denial of the motion, but did not appeal the alternative ground

6

that an identical motion had already been heard and denied. The S.C. Supreme Court affirmed since denial of the motion was based alternatively, upon an unappealed ground. Counsel was bound to know that the appeal of any trial ruling must encompass all the alternative grounds upon which the ruling was made.

. . .

**GROUND EIGHT**: The PCR court erred in finding that petitioner was not denied effective assistance of counsel and was not denied the right to address the jury, in contravention of the Sixth and Fourteenth Amendments to the U.S. Constitution, when his counsel prevented him from making a closing argument of his own composition.

**SUPPORTING FACTS**: Petitioner intended to exercise his right to address the jury in closing argument of the guilt phase. Petitioner composed his intended address and presented it to counsel. Counsel advised petitioner most of the argument was improper. Counsel advised petitioner he could not argue anything about the facts or law. Petitioner severely truncated his intended argument and made only a few bland remarks. The court and state acquiesced and participated in this treatment of petitioner's right to a final jury argument.

. . .

**GROUND TEN**: The PCR court erred in holding that petitioner was not denied effective assistance of counsel and the right to confrontation, in contravention of the Sixth and Fourteenth Amendments to the U.S. Constitution, where counsel failed to object to the admission of a non-testifying codefendant's out-of-court statement.

**SUPPORTING FACTS**: Petitioner's counsel failed to object to the introduction into evidence of an out-of-court statement of his former wife, Donna Torrence, implicating him. The statement was hearsay, violated the Confrontation Clause, and could not have been admitted over petitioner's objection. The state had no evidence of petitioner's role in the crime other than petitioner's confession. Introduction of the hearsay statement of Donna Torrence, to whom the state's only physical evidence implicated, corroborated the confession and nullified petitioner's contention before the jury that the confession was the product of duress and coercion. Although codefendant's statement was ordered redacted, it specifically implicated and identified petitioner in violation of the Confrontation Clause.



(§ 2254 petition at 5A-F.)

After considering the Respondents' motion for summary judgment and the Petitioner's response in opposition, the Magistrate Judge recommended that the Court grant the Respondents' motion for summary judgment and dismiss the Petitioner's § 2254 petition with prejudice.

## STANDARD OF REVIEW

### I.    Legal Standard for Summary Judgment

To grant a motion for summary judgment, this court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The court is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. See Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

### II.    Magistrate Judge's R&R

This Court is charged with conducting a de novo review of any portion of the R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that R&R. 28 U.S.C. § 636 (b)(1). Any written objection must specifically identify the portions of the R&R to which objections are made and the basis for those objections. Id.



8

## DISCUSSION

### I.     Habeas Corpus Relief

With respect to those claims adjudicated on the merits, habeas relief is warranted only if the Petitioner can demonstrate that the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court explained that § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. Id. at 404-05. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in controlling cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. Id. at 405-06. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies it to the facts of the particular case. Id. at 407-08. Factual determinations made by the state "shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### II.     The Magistrate Judge's Analysis

In the R&R, the Magistrate Judge first evaluated the Petitioner's claim that the trial court erred in ruling that his right to a speedy trial was not violated (ground one); the Magistrate Judge determined that the state court correctly applied the governing law. Next,



9

the Magistrate Judge evaluated the Petitioner's claim that the trial court erred in ruling that his confession was voluntary (ground two); the Magistrate Judge determined that the Petitioner had not demonstrated that the South Carolina courts' treatment of this issue was contrary to, or involved an unreasonable application of, clearly established federal law. Finally, the Magistrate Judge evaluated the Petitioner's ineffective assistance of counsel claims (grounds five, six, eight, and ten); the Magistrate Judge determined that the record supports the findings of the South Carolina courts on these claims.

## III.    The Petitioner's Objections

The Petitioner objects to the following: (1) the Magistrate Judge's evaluation of his speedy trial claim; (2) the Magistrate Judge's evaluation of his claim that his confession was involuntary; and (3) the Magistrate Judge's treatment of his ineffective assistance of counsel claims.  The Court will address each objection (or set of objections) in turn.

## I.    The Right to a Speedy Trial

In ground one of this § 2254 petition, the Petitioner argued that the trial judge erred in ruling that he was not denied his Sixth[2] and Fourteenth[3] Amendment right to a speedy

---

[2] The Sixth Amendment provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

[3] In Kloper v. North Carolina, the Supreme Court established that the right to a speedy trial is "fundamental" and is imposed by the Due Process Clause of the Fourteenth Amendment.  386 U.S. 213, 223 (1967) ("We hold here that the right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment.").



10

trial when over five years passed between his arrest and his case being called for trial.

In the R&R, the Magistrate Judge evaluated the Petitioner's speedy trial claim in accordance with the balancing test outlined by the Supreme Court in Barker v. Wingo, 407 U.S. 514 (1972), by considering the following factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. As the Magistrate Judge noted, the four factors are "related factors and must be considered together with such other circumstances as may be relevant." Id. at 533.

In considering the first factor – the length of delay – the Magistrate Judge noted that this factor acts as a triggering mechanism, i.e., "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Id. at 530. Here, because some five years passed between the time the Petitioner was arrested and the time his case was called for trial, the Magistrate Judge concluded that the delay was presumptively prejudicial and therefore must be considered along with the other factors announced in Barker. The Petitioner does not object to the Magistrate Judge's treatment of this factor, and the Court finds that the Magistrate Judge correctly determined that the five-year delay in question was presumptively prejudicial.

Next, in considering the remaining factors, the Magistrate Judge reviewed the state record. Specifically, the speedy trial issue was addressed in a hearing on September 3, 1991, before Judge Frank Eppes, at which hearing Judge Eppes denied the Petitioner's motion to dismiss the indictments for lack of a speedy trial. The issue was again addressed on May 12, 1992, before Judge Ralph King Anderson, who also denied the Petitioner's motion to dismiss.

In a written order following the hearing held on September 3, 1991, Judge Eppes

11

noted that the "delay in trial for the defendant was caused by the defendant's actions with his attorneys, other reasons for which sufficient cause has been shown, and the defendant has failed to show any prejudice in the delay." (Supp. App. at 2781.) Judge Eppes noted that the Petitioner was originally represented by John D. Delgado, who appeared at the preliminary hearing on the Petitioner's behalf. Subsequently, Delgado withdrew due to the Petitioner's family's inability to pay, and the court appointed Dale L. DuTremble to represent the Petitioner. DuTremble initiated plea negotiations but before any plea could be agreed upon, DuTremble was appointed to the position of Assistant United States Attorney. The court then appointed Delgado to represent the Defendant.

Meanwhile, the State had elected not to try Michael and Thomas together, and the State tried Michael first, resulting in a conviction and death sentence. Michael's appeal raised serious issues of how to properly instruct a jury with respect to parole eligibility in capital cases, and the State did not call Thomas's case pending a decision from the South Carolina Supreme Court.[4]  Ultimately, the South Carolina Supreme Court vacated Michael's death sentence in an opinion filed May 20, 1991. See State v. Torrence, 451 S.E.2d 883 (1991).

Delgado attempted to negotiate a plea on the Petitioner's behalf during 1989 and 1990. The Petitioner's father also requested that the State delay a death penalty trial against the Petitioner in exchange for a life plea. In the summer of 1990, Delgado

---

[4] Additionally, the Petitioner's counsel made a written motion to the Administrative Judge to continue the case pending the South Carolina Supreme Court's decision in Michael's case. Counsel noted that Thomas's case contained many of the same issues as Michael's case, and also, if Michael needed to be retried, Thomas may have offered to testify against his brother.

12

informed the State that he was optimistic that a plea could be worked out and a trial would not be necessary. DuTremble also assisted in discussions with the Petitioner on a voluntary basis to resolve the case.

In June of 1991, Delgado moved to be relieved as counsel, due in part to the Petitioner having filed a grievance against Delgado. While this motion was pending, Thomas filed a pro se motion to recuse Judge Baggett, arguing that he had been appointed ineffective counsel twice by judges of the Eleventh Circuit. Judge Baggett instructed the Defendant to take the matter to the Supreme Court, but the Supreme Court instructed Delgado to have a Circuit Court judge rule on the matter. A hearing was held before Judge Eppes on September 3, 1991. In his order, Judge Eppes made the following findings:

1. Thomas J. Torrence, his family and/or attorneys contributed to any delay in his case being tried.
2. Although he has been appointed two different, well-qualified attorneys, the defendant has not indicated a willingness to cooperate with either of them, called them ineffective and filed grievances.
3. The defendant or his attorneys requested continuances in this case.
4. Some of the major legal issues involved were also the subject of major changes in capital litigation in South Carolina announced by the Supreme Court in The State v. Michael Torrence.
5. The State must try Michael Torrence again in which the factual issues are also identical to the case against Thomas Torrence.
6. The defendant has completely failed to show any prejudice in the delay of his trial.
7. The defendant did not request a speedy trial until June 17, 1991.
8. This matter was delayed approximately one year from the date of arrest by the prosecution in Charleston County.
9. The delay is not attributable to the State, and any delay was not arbitrary or unreasonable.
10. The defendant waited until June[ ] 1991 before claiming he had been denied his right to a speedy trial.
11. When the State announced the case would not be delayed further, the defendant decided he did not want Mr. Delgado as his attorney.
12. Valid and sufficient reasons have been shown by the State for any



13

delay.

(Supp. App. at 2784-84.)

Judge Eppes granted Delgado's motion to be relieved as counsel, and attorneys

Robert T. Williams, Sr. and William Y. Rast, Jr. were appointed. Williams and Rast moved

for, and were granted, a continuance. Pursuant to an order dated September 30, 2001,

the case was not to be called before February of 1992. The trial was held in May of 1992.

In addition to the hearing before Judge Eppes, Judge Anderson addressed the

speedy trial issue in a hearing on May 12, 1992, at which hearing Judge Anderson quoted

extensively from <u>Barker</u> and cited other Supreme Court and South Carolina cases. Judge

Anderson made the following findings of fact:

> One, the law of the case in regard to this motion is controlled by the order of
> Judge Frank Eppes dated September 6, 1991. Two, factually, the court
> rejects the contention of the defendant that his pro se status at that hearing
> negates the effect of the motion filed before the court. Three, to adopt the
> contention of the defendant wherein the defendant contends that the order
> of Judge Frank Eppes has no viability would result in the procedure and
> process being misused and abused. Four, the first speedy trial motion filed
> in these cases is June 17, 1991, filed on a pro se basis. Five, in dissonance
> to the contention by the defendant, the court concludes that the defendant
> did not make a speedy trial motion on June 10, 1988. Six, the reason for the
> lengthy delay depicted in this hearing was the direct and approximate result
> of plea negotiations conduct *inter sese* state, defendant, and defendant's
> counsel. Seven, the length of the delay is directly attributable to the plea
> negotiation process that has been [sic]. Eight, the order of Judge Carol
> Connor dated September 30, 1991, is controlling from that date because of
> its specific language and verbiage. Nine, the delay that is attributable to the
> state is not unreasonable based upon the facts and circumstances presented
> in this hearing. Ten, the prejudice claimed by the defendant consists of four
> general areas: one, that his grandmother has died and will not be available
> as a character witness; two, his aunt is no longer viable in that she is in a
> facility and is possibly senile; three, Charles Brown, a former inmate of the
> jail is not available; and four, difficulties encountered by the defendant within
> the penal system. Addressing these in seriatum, the court finds and holds
> that other character witnesses can be presented in lieu of the defendant's
> grandmother and aunt. The witness, Charles Brown, may be possibly



14

located if reasonable efforts are demonstrated in that regard and the information depicted to this point is paradigmatic hearsay. In regard to the Defendant's difficulty in the penal system, clearly that results from the conduct of the defendant and is directly attributable to the defendant. Eleven, the defendant has failed to sustain the burden of proof in regard to prejudice.

(Supp. App. at 746-48.)

Here, the Magistrate Judge found that the reasons for delay were valid and reasonable. With respect to whether the Petitioner asserted his right to a speedy trial, the Magistrate Judge concluded that Judge Eppes' and Judge Anderson's finding that the Petitioner did not assert his right to a speedy trial until June 17, 1991, was supported by the record. Lastly, with respect to prejudice, the Magistrate Judge repeated the state judges' findings, ultimately concluding that the state courts properly applied the four-part balancing test announced by the Supreme Court in Barker.

The Petitioner objects to the Magistrate Judge's finding that the reasons for delay were valid and reasonable. First, the Petitioner complains that he was denied his right to the assistance of counsel at the hearing before Judge Eppes because his attorney at the time, Delgado, had moved to be relieved and did not assist with the motion. The Petitioner cites United States v. Cronic, 466 U.S. 648 (1984), and argues that Deglado's failure to assist him at the hearing before Judge Eppes denied him of counsel at a critical stage of the proceedings, resulting in per se prejudice to him.

Here, the Court recognizes that Delgado did not specifically argue the motion to dismiss the indictments before Judge Eppes; rather, the Petitioner himself argued the motion at length. Nevertheless, Delgado appeared at the hearing on behalf of the Petitioner, and thus, it is questionable whether the Petitioner can successfully argue that

15

he was completely denied counsel at this stage.[5] See, e.g., Glover v. Miro, 262 F.3d 268, 276 (4th Cir. 2001) (citing Roe v. Flores-Ortega, 528 U.S. 470, 483 (2000)) ("A finding of per se prejudice for complete denial of counsel requires at a minimum that no lawyer be present at a critical stage of the proceeding."). Likewise, it is questionable whether this stage constitutes a "critical stage" of the proceedings. Nevertheless, even giving the Petitioner the benefit of the doubt and assuming that Delgado's motion to be relieved resulted in the Petitioner's denial of counsel at a critical stage, it is clear that any such error was harmless. See, e.g., United States v. Owen, 407 F.3d 222 (4th Cir. 2005). In fact, the record indicates that the Petitioner argued his motion at length, and the Petitioner has not asserted that his attorney could have or should have made any additional or different arguments than those he made. Moreover, the fact remains that any deficiency was later cured, as the Petitioner was represented by counsel at a subsequent hearing on the same speedy trial issue before Judge Anderson. Thus, the Court denies the Petitioner's objections.

The Petitioner also raises general objections to the Magistrate Judge's finding that the five-year delay between the Petitioner's arrest and his trial was justified. For instance, the Petitioner asserts that the State did not have a valid reason to wait to try Thomas until

---

[5] As the PCR court stated in its order:

> Contrary to the allegation contained in the application, the transcript of the hearing before Judge Eppes and the testimony of counsel at the PCR hearing show that counsel was present during the hearing and was available to the Applicant. Therefore, the Court find the Applicant had the opportunity to proceed with assistance if he so chose.

(Supp. App. at 15.)

after trying and retrying his brother because the jury instruction at issue in his brother's case was not at issue in the present case. For the most part, these objections merely rehash arguments previously made and rejected by the Magistrate Judge, and ultimately, after an extensive review of the record, the Court agrees with the Magistrate Judge and finds these objections to be without merit.

Likewise, the Court agrees with the Magistrate Judge that the state court's determination that the Petitioner did not demand a speedy trial until June of 1991 was supported by the record. While a request for a speedy trial need not be explicit, the letters relied upon by the Petitioner in arguing that he demanded a speedy trial before June of 1991 do not appear to constitute demands for a speedy trial. Moreover, based on the circumstances surrounding the Petitioner's plea negotiations and his brother's trial, as well as the various documents and exhibits in the record, the Court finds that the Petitioner has failed to successfully rebut the state's finding that he did not demand a speedy trial until June of 1991.

Finally, the Petitioner objects to the Magistrate Judge's conclusion that there was no showing of prejudice to the Petitioner. The Petitioner claims that he lost the availability of two witnesses, Mr. Brown and Lloyd Staples. Here, the Magistrate Judge relied on Judge Anderson's findings of prejudice, quoted previously in this Order. Judge Anderson noted that the alleged prejudice suffered by the Petitioner was largely curable in that other character witnesses could testify on behalf of the Petitioner. Also, Judge Anderson noted that Mr. Brown may be located if reasonable efforts are made and that the information depicted to this point is paradigmatic hearsay. Ultimately, the Magistrate Judge determined that the state court correctly applied the four-part balancing test from Barker

v. Wingo, and after a lengthy review of the record, this Court agrees. Therefore, the Petitioner's objections are denied.

## II.    Voluntariness of the Petitioner's Confession

In his § 2254 petition, the Petitioner asserts that the state court erred in ruling that his confession was voluntarily made. With respect to the confessions at issue, the record indicates that after being arrested, the Petitioner gave a series of progressively inculpatory statements in Charleston and Lexington counties. One was a joint tape-recorded statement with Donna. The last of the statements was given in Lexington county in the early morning hours of April 6, 1987.

On May 12, 1992, a lengthy Jackson v. Denno hearing was held before Judge Anderson. See 378 U.S. 368 (1964). At the conclusion of the hearing, Judge Anderson made the following on-the-record findings:

. . .

Two, this court finds by a preponderance of the evidence that the defendant was fully advised of his rights as required by Miranda v. Arizona, 384 U.S. 436, and that he was fully informed of his rights under the Fifth and Sixth Amendments to the Constitution of the United States. . . .

Three, this court concludes by a preponderance of the evidence that all the statements identified in this record made by the defendant were statements that were freely and voluntarily given by the defendant without any duress, without coercion, without undue influence, without reward, without promise or hope of reward, without promise of leniency, without threat of injury, and without compulsion or inducement of any kind, and that these statements are the voluntary and free produce of the unconstrained will of the defendant. . . .

(Supp. App. at 383-84.) Based on Judge Anderson's findings, the statements were admitted into evidence and considered by the jury with proper instructions from the court.

On direct appeal, the Petitioner challenged Judge Anderson's ruling, arguing that

his final statement was involuntary because the officers questioned him "in three different cities, over a sixteen hour period, denying him sleep, food, the support and advice of family until he gave the statement the police wanted." (Final Brief of Appellant, p. l.) In its memorandum opinion affirming the Petitioner's conviction, the South Carolina Supreme Court cited cases dealing with the voluntariness of confessions, and therefore, it appears that the court considered this issue on the merits.

In the R&R, the Magistrate Judge noted that courts have considered various factors, including the age and mental capacity of the confessor, the duration of the interrogation, and/or the nature of the questioning, to be relevant when examining the totality of the circumstances surrounding a confession. Here, the Petitioner's first contact with law enforcement was between 1:30 and 1:45 p.m., and he concluded his final statement at around 6:00 a.m. the following morning. As the Magistrate Judge pointed out, some portion of this time was taken to transport the Petitioner from Charleston to Pine Ridge to Lexington. Also, it does not appear that the Petitioner was under continuous interrogation during this time. With respect to the Petitioner's argument that he was subjected to physical coercion by being deprived of food, cigarettes, sleep, and contact with his family, the record indicates that the Torrences received food in Charleston. Also, Investigator Hawkins denied withholding cigarettes from the Petitioner and testified that he actually supplied the Petitioner with cigarettes. The investigators testified that they denied attempts to keep the Petitioner awake and that he could have slept during transport but did not. The officers also denied that the Petitioner asked to call his father during the interrogation. Lastly, with respect to the Petitioner's complaint that he was not permitted to speak with Donna during the interrogation, it is clear that the officers had valid reasons to keep the

19

Petitioner and Donna separate for questioning. The Petitioner concedes that the officers had valid reasons but argues that the authorities used the Petitioner's desire to see his wife as an incentive to provide a satisfactory statement. The Petitioner provides no evidence in support of this assertion.

In his objections, the Petitioner merely rehashes previously made and rejected arguments. He points to no legal error on the part of the Magistrate Judge; rather, it is apparent that he simply disagrees with the Magistrate Judge's conclusion. After an extensive review of the record, including the R&R and the Petitioner's objections, the Court agrees with the Magistrate Judge that the Petitioner has failed to show that the state court's determination that the confession was voluntary was contrary to, or involved an unreasonable application of, clearly established federal law. The Petitioner's objections are therefore denied.

### III.    Ineffective Assistance of Counsel

In his next objection, the Petitioner asserts that the statement of Donna Torrence, a co-defendant, was not admissible as evidence against him, and that his trial counsel was ineffective for failing to object to the use of such statement. Additionally, the Petitioner argues that his trial counsel was ineffective in failing to adequately advise and prepare him for his opportunity to address the jury.

A meritorious ineffective assistance claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687-98 (1984). The first part of the test, a court's evaluation of counsel's performance, must be "highly deferential" under this standard, so as not to "second-guess" the performance. Id. at 689. "[A] court

20

must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal quotation marks and citation omitted); see also Fields v. Attorney General of Maryland, 956 F.2d 1290, 1297-99 (4th Cir. 1992); Roach v. Martin, 757 F.2d 1463, 1476 (4th Cir. 1985). To establish prejudice and thereby fulfill the second prong of the ineffective assistance test, the challenging defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694-95.

Here, the Magistrate Judge noted that the PCR court did not specifically address each of the Petitioner's ineffective assistance claims; however, the PCR court cited Strickland v. Washington and found that the Petitioner's counsel "clearly performed within the parameters of the prevailing professional norms in the trial of [his] case" and that "no issue raised by [the Petitioner] regarding the assistance of his counsel would entitle [him] to relief pursuant to the PCR Act because it could not be reasonably calculated to produce a different result at trial." (App. at 8.)

With respect to his claim that his trial counsel was ineffective for failing to object to the use of Donna's statement, the Magistrate Judge concluded that trial counsel could have lodged a viable objection based on the hearsay rule and Bruton v. United States, 391 U.S. 123 (1968). However, the Magistrate Judge noted that trial counsel testified at the PCR hearing that no objection was made because the statement was helpful to the defense. Stated simply, because counsels' motion to suppress the Petitioner's final

21

statement had been denied, and because the joint statement of the Petitioner and Donna tended to minimize the Petitioner's role in the murder as compared with his final statement, counsel made the tactical decision not to object to the use of the statement. <u>See</u> <u>Strickland</u>, 466 U.S. at 689.

In his objections, the Petitioner argues that his counsels' decision not to object to the use of the joint statement was objectively unreasonable. The Petitioner also points out that the Magistrate Judge incorrectly indicated that this statement was used during the penalty phase of the trial when it was used during the innocence/guilt phase.

After a review of the record, the Court finds that the Petitioner has not overcome the presumption that his counsels' performance fell within the range of reasonably professional assistance. Thus, the Court finds that the Petitioner has not overcome the presumption that, under the circumstances, the challenged action was sound trial strategy on the part of his counsel.

Next, the Petitioner argues that his trial counsel was ineffective in failing to adequately advise him and prepare him for his opportunity to address the jury. Specifically, the Petitioner argues that his trial attorneys limited his jury argument in the guilt/innocence phase of the trial. He claims that he stayed up the night before composing an argument for the jury but that his attorneys told him that he could not give most of his statement. The Petitioner argues that his written remarks were torn up by a law clerk. Nowhere does the Petitioner indicate what he intended to say but was prevented from saying.

As the Magistrate Jude noted, in South Carolina, a defendant in a capital case has the statutory right to address the jury in both phases of a bifurcated trial, in addition to a constitutional right to testify. The Petitioner did not testify at trial. According to the

22

Petitioner's attorneys, they worked with the Petitioner on the content of the statement, advising him that "he could not testify in this statement that he was going to give to the jury." As the Magistrate Judge noted, the Petitioner's attorneys gave him correct legal advice – namely, that testimonial evidence cannot be presented during closing arguments. As such, the Magistrate Judge concluded that the PCR court correctly ruled that there was no error or prejudice with respect to this claim.

In his objections, the Petitioner argues that Judge Anderson was prepared to give the Petitioner wide latitude in making his remarks to the jury but that he did not have the benefit of counsel to aid him in doing so. Again, it appears that the Petitioner is merely rehashing his arguments and not pointing to any error in the Magistrate Judge's analysis. Thus, after a review of the record, the Court finds that the Petitioner has failed to show that the state court's decision on this issue was contrary to, or involved an unreasonable application of, clearly established federal law.

In his § 2254 petition, the Petitioner asserted various other ineffective assistance of counsel claims, all of which the Magistrate Judge found to be without merit. The Petitioner has not specifically objected to these findings, and the Court has not found any error in these findings after reviewing the case. The Court adopts the Magistrate Judge's R&R with respect to the Petitioner's other claims of ineffective assistance of counsel.

Finally, in his objections, the Petitioner asserts that the Magistrate Judge should have granted his motion to supplement the record with his affidavit and the notes of one of his attorneys, DuTremble. In any event, the Petitioner acknowledges that the Magistrate Judge "apparently considered the evidence to some degree nonetheless." (Obj. at 13.) Indeed, it appears that the Magistrate Judge considered the evidence to some degree, and

23

therefore, the Court finds this objection moot. In any event, this evidence was not properly before the state habeas courts, and the Court finds that the Petitioner's affidavit and his counsel's notes ultimately do not change the conclusion that the Petitioner has failed to demonstrate that the state court's adjudication of his claims resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law.

## CONCLUSION

Based on the foregoing, it is

**ORDERED** that the Magistrate Judge's R&R is adopted; the Petitioner's objections are denied; the Respondents' motion for summary judgment is granted; and the Petitioner's § 2254 petition is denied.

**IT IS SO ORDERED**.

The Honorable Sol Blatt, Jr.
Senior United States District Judge

March **5**, 2008
Charleston, South Carolina